## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TIFFANYE MADDOX MING,

        Plaintiff,

    v.

SELECT PORTFOLIO SERVICING,
INC.,

        Defendant.

CIVIL ACTION FILE NO.

1:17-cv-03396-TCB-RGV

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Defendant Select Portfolio Servicing, Inc. ("SPS"), moves to dismiss the second amended complaint filed by plaintiff Tiffanye Maddox Ming ("Ming") for failure to state a claim. [Doc. 20].[1]  Ming has not filed a response to SPS's motion, and it is

---

[1] In her original and first amended complaints, plaintiff named U.S. Bank National Association, as Trustee f/b/o Holders of Structured Asset Mortgage Investment II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-12 ("U.S. Bank") as a defendant, along with SPS. See [Docs. 1-1 & 3]. On October 6, 2017, the parties filed a proposed Consent Order, see [Doc. 12], which remanded several of Ming's claims to state court, [id.].  On October 24, 2017, Ming filed her second amended complaint, naming SPS as the sole defendant in this case, see [Doc. 17], and U.S. Bank was therefore terminated as a named defendant in this case on that day.  Thus, Ming's claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., asserted against SPS are the only remaining claims in this case.  The listed document and page numbers in citations to the record in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

therefore deemed to be unopposed.  See LR 7.1B, NDGa.[2]  For the reasons that follow, it is **RECOMMENDED** that SPS's motion to dismiss the second amended complaint, [Doc. 20], be **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2013, Ming filed a bankruptcy petition in the Northern District of Georgia under Chapter 13 of the Bankruptcy Code, which was later converted to a Chapter 11 case, and on December 23, 2013, the Bankruptcy Court confirmed Ming's first amended plan of reorganization (the "Plan").  [Doc. 17 ¶¶ 7-8, 11; Docs. 20-2 & 20-3].[3]  Ming alleges that SPS obtained the servicing rights to her mortgage

---

[2] "Although the motion[ to dismiss] [is] unopposed, the Court will address the merits of the motion[]."  Capital One Bank (USA), N.A. v. Mayfield, Civil Action File No. 1:10–cv–02309–TWT–RGV, 2010 WL 4826152, at *1 n.1 (N.D. Ga. Oct. 18, 2010), adopted by 2010 WL 4823233, at *1 (N.D. Ga. Nov. 19, 2010) (citation omitted) (citing Trainer v. Nix, Civil Action No. 1:07–CV–1227–JOF, 2009 WL 2370677, at *1 (N.D. Ga. July 29, 2009)).

[3] The facts are taken from the pleadings and do not constitute findings of fact by the Court.  Additionally, SPS has attached certain exhibits to its motion, [Docs. 20-2 through 20-5], and while the Court may generally not consider matters outside the pleadings "without converting [a motion to dismiss] to a motion for summary judgment," Redding v. Tuggle, No. 1:05-cv-2899-WSD, 2006 WL 2166726, at *5 (N.D. Ga. July 31, 2006), adopted at *1; see also Omega Patents, LLC v. Lear Corp., No. 6:07-cv-1422-Orl-31DAB, 2008 WL 821886, at *1 (M.D. Fla. Mar. 20, 2008), the Court may consider exhibits without converting the motion into a motion for summary judgment if the exhibits are "central to [Ming's] claim[s] and the authenticity of the document[s] [are] not challenged," Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished) (citing Horsley v. Feldt, 304 F.3d 1125, 1134) (11th Cir. 2002)); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)); see also Atwater v. Nat'l

loan with JPMorgan Chase Bank, N.A. ("Chase"), and that Chase "filed a claim in

[her] Chapter 11 Case in the amount of $13,284.36[.]" [Doc. 17 ¶¶ 10, 17; Doc. 20-4].[4]

Ming alleges that the Plan "in the Bankruptcy Case, did not provide that

[Chase] would retain a lien on [the] property, and the [Chase] Claim became an

unsecured claim in the bankruptcy case . . . . in the amount of $13,284.36." [Doc. 17

¶¶ 14-15]. She asserts that "[p]ursuant to the Disclosure statement approved by the

bankruptcy court, 'Confirmation of the Plan vests all property of the estate in the

Debtor free and clear of claims and interests of creditors, unless otherwise provided

in the Plan,'" [id. ¶ 13], and that she "has remitted quarterly disbursements on the

[Chase] Claim . . . pursuant to the confirmed [Plan]," [id. ¶ 16].

---

Football League Players Ass'n, Civil Action No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *3 (N.D. Ga. Mar. 29, 2007); Cobb v. Marshall, 481 F. Supp. 2d 1248, 1254 n.2 (M.D. Ala. 2007) (citations omitted). The documents at issue here are central to Ming's claims and Ming has not challenged their authenticity. Zinn v. GMAC Mortg., No. 1:05 CV 1747 MHS, 2006 WL 418437, at * 3 (N.D. Ga. Feb. 21, 2006). Furthermore, all of the documents are public records, and "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam) (unpublished) (citations omitted). Accordingly, the Court will consider the exhibits attached to SPS's motion to dismiss without converting the motion to a motion for summary judgment.

[4] The proof of claim filed by Chase evinces that Chase filed it on behalf of U.S. Bank National Association, as Trustee for HomeBanc Mortgage Trust 2005-5 Mortgage Backed Notes, Series 2005-5, for a secured debt in the amount of $13,284.36. [Doc. 20-4 at 1-8]. Attached to this proof of claim is a copy of the security deed and promissory note, which required Ming to make monthly payments. See [id. at 9-18].

Based on these factual allegations, Ming asserts claims against SPS for negligent and willful violations of the FCRA. See [id. ¶¶ 18-47]. In particular, Ming alleges that "SPS reported adverse information, which was inaccurate information, to Consumer Reporting [Agencies ('CRAs')] . . . that [she was] delinquent on payments on the [Chase] Claim, and also an overstatement of the amount that [she was] indebted on the [Chase] Claim." [Id. ¶ 19]. She asserts that she informed Equifax and TransUnion, both of which are CRAs, that she "disputed the accuracy of the adverse information reported by SPS" and that she "informed SPS that the . . . adverse reporting of the [Chase] Claim was inaccurate." [Id. ¶¶ 18, 20-22, 30-31]. She claims that Equifax and TransUnion investigated her dispute "by notifying SPS of the dispute," but that SPS "failed to timely correct the Adverse Information being reported" and that it "repeatedly provided inaccurate and adverse information" to Equifax and TransUnion "concerning [her] obligations and payment history to SPS." [Id. ¶¶ 23-26, 32-35]. She alleges that SPS "failed to implement procedures to adequately investigate the disputes of consumers" and that this failure was "reckless" and "constitutes a willful violation of the FCRA." [Id. ¶¶ 36-38].[5] Ming

_____

[5] Ming alleges that SPS "previously reported inaccurate information regarding [her] obligations to US Bank to [CRAs] and, on February 18, 2016, [she] commenced an action against SPS in the United States District Court for the Northern District of Georgia, . . . alleging violations of the Fair Debt Reporting Act," which ultimately ended with a settlement agreement being executed by the parties on September 16, 2016, and a stipulation of dismissal being filed on October 26, 2016. [Doc. 17 ¶¶ 40-

seeks statutory and punitive damages, and she alleges that she has "been declined credit on multiple occasions" and has "suffered mental distress including, but not limited to, sleeplessness, anxiety, [and] physical manifestations." [Id. ¶¶ 28-29, 39, 47].

## II. STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court must accept Ming's allegations as true and construe the second amended complaint in her favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).[6] "While a complaint attacked by a Rule 12(b)(6) motion

---

42]. She asserts that pursuant to the settlement agreement, SPS "corrected the reporting of [her] obligations to Defendant US Bank to [CRAs]" and that it "did not report the [Chase] Claim as delinquent to [CRAs] until after [she] and SPS entered into the Settlement Agreement and Release of Claims[.]" [Id. ¶¶ 43-44 (emphasis omitted)]. She then asserts that the "incorrect and adverse reporting of the [Chase] Claim by SPS to [CRAs] was willful and vindictive in response to [her] settlement in the District Court Action." [Id. ¶ 45].

[6] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'" Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). That is, "[t]o survive a motion to dismiss, [Ming] must do more than merely state legal conclusions; [she is] required to allege some specific factual bases for those conclusions or face dismissal of [her] claims." Brockman v. Ocwen Loan Servicing, LLC, 1:15-cv-745-WSD, 2016 WL 589698, at *4 (N.D. Ga. Feb. 11, 2016) (citations and internal marks omitted); see also White v. Bank of Am. Bank, NA, 597 F. App'x 1015,

Case 1:17-cv-03396-TCB   Document 24   Filed 04/23/18   Page 6 of 16

to dismiss does not need detailed factual allegations, [Ming's] obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., as the second amended complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

---

1018 (11th Cir. 2014) (per curiam) (citation and internal marks omitted) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). Moreover, "in evaluating the sufficiency of [Ming's] pleadings the Court must make reasonable inferences in [her] favor, but [is] not required to draw [her] inference." Litman v. Mabus, Case No.: 1:13–cv–43 (WLS), 2015 WL 5317294, at *2 (M.D. Ga. Sept. 11, 2015), aff'd, 703 F. App'x 766 (11th Cir. 2017) (per curiam) (unpublished) (third alteration in original) (citations and internal marks omitted).

6

nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

Id. at 678-79 (last alteration in original) (citations omitted).  Thus, "[t]o state a plausible claim for relief, [Ming] must go beyond merely pleading the 'sheer possibility' of unlawful activity by [SPS] and so must offer 'factual content that allows the court to draw the reasonable inference that [SPS] is liable for the misconduct alleged.'"  Stabb v. GMAC Mortg., LLC, 579 F. App'x 706, 708 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law."  Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted).

## III. DISCUSSION

In its motion to dismiss, SPS contends that Ming's FCRA claims asserted against it are due to be dismissed because she "is simply wrong on how the loan was treated in the bankruptcy [P]lan," [Doc. 20-1 at 2], and her second amended complaint fails to allege any facts to support a claim of either negligent or willful noncompliance, [id. at 7-16].  Specifically, SPS asserts that Ming's "claim for negligent noncompliance fails" because she "has failed to allege any facts showing

that the reporting by SPS was inaccurate" and has "failed to show that SPS was negligent in its credit reporting," since she has "provided only conclusions, and did not even provide such rudimentary information as the dates on which she sent the disputes, the content of the disputes, or the dates that the disputes were forwarded by the credit bureaus to SPS." [Id. at 8-9, 11-12 (citation omitted)]. Additionally, SPS asserts that Ming's claims for willful noncompliance "initially fails for the same reason as [her negligent noncompliance claim]- [she] has misread her confirmed bankruptcy [P]lan and has failed to allege any facts showing how SPS could have misreported the debt." [Id. at 13-14].

SPS further asserts that Ming's willful noncompliance claim in Count II fails because she alleges that SPS violated the FCRA by its "reckless conduct in failing to implement procedures to adequately investigate disputes of consumers," but that it "cannot act in reckless disregard of a statutory requirement that does not [] apply to it." [Id. at 14 (internal marks omitted)]. Finally, SPS asserts that Ming's "allegations concerning willfulness [in Count III of her second amended complaint] center on her belief that SPS began reporting incorrect information as retaliation for settling a prior FCRA lawsuit" and that "[t]his is not only 'pure speculation and conjecture'– there are no facts to support this belief – but is outright fanciful." [Id. at 15]. As previously stated, Ming has not responded to SPS's motion to dismiss her

second amended complaint, and the time to do so has passed, rendering SPS's motion unopposed. See LR 7.1B, NDGa. The Court will therefore address the merits of SPS's motion. [Doc. 20].

The FCRA "governs the use and dissemination of consumer credit information." Meeks v. Murphy Auto Grp., Inc., No. 8:09-cv-1050-T-TBM, 2010 WL 5174525, at *7 (M.D. Fla. Dec. 15, 2010), aff'd, 441 F. App'x 683 (11th Cir. 2011) (per curiam) (unpublished). It requires a CRA[7] "to follow 'reasonable procedures to assure maximum possible accuracy' of the data within a consumer's credit report." Ryan v. Trans Union Corp., No. 99 C 216, 2000 WL 1100440, at *1 (N.D. Ill. Aug. 4, 2000) (quoting 15 U.S.C. § 1681e(b)). Additionally, "[i]n 1996, Congress amended the FCRA [by adding § 1681s-2] to impose duties upon persons who furnish information to [CRAs] . . . ."[8] Lofton-Taylor v. Verizon Wireless, Civil Action No.

---

[7] The FCRA defines a CRA as follows:

[A]ny person, which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

[8] "The term 'furnishers of information' is not specifically defined within the FCRA but generally includes any entity that reports information to a CRA which is

05-0532-CG-B, 2006 WL 3333759, at *4 (S.D. Ala. Nov. 14, 2006), aff'd, 262 F. App'x 999 (11th Cir. 2008) (per curiam) (unpublished) (last alteration in original) (citation and internal marks omitted); see also Jackson v. Genesys Credit Mgmt., No. 06-61500-CIV, 2007 WL 2113626, at *2 (S.D. Fla. July 23, 2007) (stating that 15 U.S.C. § 1681s-2 "is the only part of the FCRA that governs the duties of furnishers of information to the [CRAs]").

Under § 1681s-2(a), "the FCRA prohibits furnishers of credit information from providing false information." Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted).  Although section 1681s-2(a) of the FCRA "explicitly bars private suits for violations of this provision," Quale v. Unifund CCR Partners, Civil Action No. 09-0519-CG-M, 2010 WL 1417903, at *4 (S.D. Ala. Jan. 29, 2010), adopted by 2010 WL 1417907, at *1 (S.D. Ala. Mar. 30, 2010) (internal marks omitted) (quoting Peart, 345 F. App'x at 386), the remaining provision of the FCRA governing furnishers of credit information, § 1681s-2(b), may serve as the basis for a private suit where the furnisher receives notice from a CRA that the consumer disputes the information, New v. CitiFinancial Auto Credit, Inc., No. 1:10–CV–905–WKW, 2012 WL 2415532, at *3 (M.D. Ala. June 26, 2012) (citations

---

relevant to a consumer's credit rating."  Paredes v. Sallie Mae, Civil No. 11–2470 (NLH/KMW), 2011 WL 5599605, at *4 (D.N.J. Nov. 16, 2011) (footnote and citation omitted).

omitted); see also Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008)

(per curiam) (unpublished) (citation omitted); Foxx v. Ocwen Loan Servicing, LLC,

No. 8:11–CV–1766–T–17EAK, 2012 WL 2048252, at *5 (M.D. Fla. June 6, 2012)

(citations omitted).  Upon receiving notice of a dispute from a CRA, § 1681s-2(b)

"requires individuals or entities who furnish information to [CRAs] to undertake a

number of steps[.]"  McReynolds v. Ally Fin., No. 6:11–cv–56, 2011 WL 5358702, at

*2 (S.D. Ga. Nov. 7, 2011).[9]  "Such an individual or entity must conduct a[]

[reasonable] investigation, review all of the relevant information the individual or

entity provided to the [CRA], and report the results of the investigation to the

agency."  Id. (citation omitted); see also Howard v. Pinnacle Credit Servs., LLC, No.

4:09–CV–85 (CDL), 2010 WL 2600753, at *3 (M.D. Ga. June 24, 2010).  Thereafter,

---

[9] Because § 1681s-2(b) only requires furnishers of credit information such as
SPS to investigate the accuracy of reported information upon receiving a notice of
a dispute from a CRA, see Peart, 345 F. App'x at 386 (citation omitted), any notice
of dispute Ming sent directly to SPS, see [Doc. 17 ¶ 22], is irrelevant for purposes of
this claim, see Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1106 (9th Cir. 2012)
(citation omitted) (finding plaintiff's "direct complaint to [the bank] . . . would not
have triggered any duty since it was unaccompanied by CRA notification"); Evans
v. Gen. Elec. Co., No. CV611–110, 2012 WL 332446, at *1 (S.D. Ga. Feb. 1, 2012),
adopted by 2012 WL 566432, at *1 (S.D. Ga. Feb. 21, 2012) (finding plaintiff "cannot
backdoor a claim under § 1681s-2(a) through § 1681s-2(b)"); Groves v. U.S. Bank, No.
8:10–CV–2665–T–17TGW, 2011 WL 2192821, at *5 (M.D. Fla. June 6, 2011) (finding
a plaintiff's direct dispute with a furnisher under § 1681s-2(a) "does not trigger the
furnisher's duty under [§] 1681s-2(b)"); see also Bowman v. CitiMortgage, Inc., Civil
Action No. 11–0047–KD–N, 2011 WL 2039576, at *3 (S.D. Ala. May 6, 2011), adopted
by 2011 WL 2160043, at *1 (S.D. Ala. May 25, 2011).

"[a]dditional steps are required if the individual or entity discovers the report to the agency to be false." McReynolds, 2011 WL 5358702, at *2 (citation omitted). Thus, "to support an FCRA claim against a furnisher of information, a private plaintiff must allege that the furnisher, after receiving proper written notice of a dispute regarding the completeness or accuracy of information provided by a person to a [CRA]," did one or more of the following:

> (1) failed to conduct an investigation with respect to the disputed information; (2) failed to review all relevant information provided by the [CRA] pursuant to § 1681i(a)(2) of the FCRA; (3) failed to report the results of the investigation to the [CRA]; or, (4) if an item of information disputed by a consumer is found to be inaccurate, incomplete, or cannot be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

Howard v. DirecTV Grp., Inc., No. CV 109–156, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012) (citation omitted).

Ming's second amended complaint fails to state a claim against SPS under this provision of the FCRA for negligent or willful noncompliance. As SPS points out, Ming "bases her claim on the []belief that the confirmed Plan treated the Chase Proof of Claim as unsecured and entitled her to make quarterly, rather than monthly, payments to SPS." [Doc. 20-1 at 9]; see also [Doc. 17 ¶¶ 14-16]. As a basis for this belief, Ming asserts that the Disclosure statement provided that confirmation of the Plan would "vest[] all property of the estate in the Debtor free and clear of claims

and interests of creditors, unless otherwise provided in the Plan," and that the Plan "did not provide that [Chase] would retain a lien on [the] property," thereby rendering Chase's claim unsecured. [Doc. 17 ¶¶ 13-14]. Ming's assertion, however, overlooks the fact that the Disclosure statement specifically classified Chase's claim under "Class H," which neither the Disclosure statement, nor the Plan described, but that the Plan specifically classified general unsecured creditors under "Class G" and referenced the real property at issue under "Class E." See [Doc. 20-5 at 21]; see also [Docs. 20-3 & 20-5]. Thus, because the Plan omitted any reference to Class H, or Chase's claim in particular, it appears to have omitted the claim from the Plan, which SPS contends means the claim is "deemed 'not provided for,'" leaving Chase with "all 'rights which survive confirmation of the debtor's plan,'" including Chase's "right to be secured and the right to receive monthly payments." [Doc. 20-1 at 9 (quoting In re Lee, 182 B.R. 354, 358 (Bankr. S.D. Ga. 1995))].[10]  Accordingly,

---

[10] The Plan did reference another claim secured by the same property listed in Chase's claim and provided that it would be paid in full over a specific period of time with monthly installments and that the claimant would retain a lien on the property. See [Doc. 20-3 at 5]. The order confirming the Plan also granted relief from the automatic stay and noted that the claimant could proceed with foreclosure against the property that secures Chase's claim and "exercise any and all rights it may have in the collateral in full satisfaction of its claim[.]" [Doc. 20-2 at 3]. While Ming relies on language in the Disclosure statement that "'Confirmation of the Plan vests all property of the estate in the Debtor free and clear of claims and interests of creditors, unless otherwise provided in the Plan,'" to support her theory that Chase's claim is unsecured since it was not provided for in the Plan, [Doc. 17 ¶¶ 13-14]; see also [Doc. 20-5 at 14], the property that secured Chase's claim did not vest in the

Ming's allegation that SPS negligently and willfully violated the FCRA because it inaccurately reported to Equifax and TransUnion that she was delinquent on payments to Chase since she timely made quarterly disbursements, [Doc. 17 ¶¶ 16, 19-21, 34-35, 37-38, 45-46], is not plausible on the record before the Court because the Plan did not modify Chase's secured claim in such a manner, and Ming has therefore failed to allege facts that show SPS furnished any inaccurate information to the CRAs at issue.[11]

Even if the Court accepts that Chase's claim was a general unsecured claim in the underlying bankruptcy action, Ming's "allegations amount to nothing more

---

Debtor free and clear of claims and interest, and since the Plan made no mention of Chase's claim, it did not extinguish its lien, and Chase appears to have retained its rights as a secured creditor in the property that was subject to foreclosure, In re Lee, 182 B.R. at 358; see also Relihan v. Exchange Bank, 69 B.R. 122, 127 (S.D. Ga. 1985) (emphasis, citation, and internal marks omitted) (finding in a Chapter 11 case that a secured creditor's lien was not extinguished by a confirmation order since § 1141(c) "does not free the [] property of liens," but only "of any claim or interest," which are "distinct from a lien" and that "it would be odd if Congress had chosen that [the undefined term of interest] to mean lien, when they could have used the defined term lien and avoided uncertainty").

[11] Ming also alleges that SPS reported inaccurate information to CRAs by providing "an overstatement of the amount that [she] is indebted on the [Chase] claim." [Doc. 17 ¶ 19]. However, she did not specify how the amount was overstated, and to the extent she claims that she does not owe the amount reported to the CRAs, the amount she alleged in her complaint, see [id. ¶ 15], is identical to the amount listed on Chase's proof of claim, see [Doc. 20-4 at 2], and she has therefore failed to allege facts plausibly supporting any inaccurate reporting of an overstatement of the amount.

than a recitation of the elements of [her] purported claim[s], and therefore, are not

presumed to be true and are insufficient to state a plausible claim for relief."

Celestine v. Capital One, Civil Action No. 17-20237-Civ-Scola, 2017 WL 4174804, at

*3 (S.D. Fla. Sept. 19, 2017) (citation omitted).  Indeed, Ming "must allege specific

facts that show that [SPS] willfully or negligently failed to comply with the FCRA,"

id. (citing Rush v. Macy's N.Y., Inc., 775 F.2d 1554, 1557 (11th Cir. 1985)), but Ming

"has alleged at best a legal defense to the debt, not a factual inaccuracy in [SPS's]

reporting," which "is an insufficient basis for her asserted FCRA claims against a

furnisher under § 1681s-2(b)," Leones v. Rushmore Loan Mgmt. Servs., LLC, CASE

NO.: 0:17-CV-61216-WPD, 2017 WL 6343622, at *3 (S.D. Fla. Dec. 11, 2017) (footnote

and citations omitted).[12]  Accordingly, it is **RECOMMENDED** that SPS's motion to

---

[12] Because the Court finds that Ming's FCRA claims are due to be dismissed
for failure to plead allegations that show SPS provided any inaccurate information
to the CRAs, the Court need not address SPS's remaining arguments for dismissal
in detail.  See [Doc. 20-1 at 11-16].  However, the Court notes that while Count II of
Ming's second amended complaint alleges that SPS "failed to implement procedures
to adequately investigate the disputes of consumers," [Doc. 17 ¶ 36], the FCRA only
imposes two duties upon furnishers– (1) the duty to provide accurate information
and (2) the duty to investigate upon receipt of notice of a dispute from a CRA, see
15 U.S.C. § 1681s-2(a)-(b).  Rather, the duty Ming alleges SPS failed to comply with
only applies to CRAs, not furnishers, since § 1681e "requires every CRA to maintain
reasonable procedures designed to avoid violations of . . . [the FCRA]" and to
"follow reasonable procedures to assure maximum possible accuracy of the
information concerning the individual about whom the report relates."  Farmer v.
Phillips Agency, Inc., 285 F.R.D. 688, 697 (N.D. Ga. 2012) (second alteration in
original) (internal marks omitted).  Thus, as SPS contends, it "cannot act in reckless
disregard of a statutory requirement that does not even apply to it."  [Doc. 20-1 at

dismiss, [Doc. 20], be **GRANTED** and that Ming's FCRA claims be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that SPS's motion to dismiss, [Doc. 20], be **GRANTED** and that Ming's remaining FCRA claims asserted against SPS in her second amended complaint be **DISMISSED WITH PREJUDICE**.

The Clerk is hereby **DIRECTED** to terminate this referral.

**IT IS SO RECOMMENDED** and **DIRECTED**, this 23rd day of April, 2018.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

14].

16